Lisa S. Kantor (State Bar No. 110678)
  e-mail: lkantor@kantorlaw.net
Elizabeth K. Green (State Bar No. 199634)
  e-mail: egreen@kantorlaw.net
KANTOR & KANTOR, LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525 (Tel)
(818) 350 6272 (Fax)

Attorneys for Plaintiff Suzanne Stone

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUZANNE STONE, | Case No.: [Case No.] |
| Plaintiff, | **ERISA COMPLAINT** |
| v. | |
| DEXCOM BENEFITS PLAN; U.S. BEHAVIORAL HEALTH PLAN, CALIFORNIA dba OptumHealth Behavioral Solutions of California, | |
| Defendants. | |

## Parties

1. Plaintiff resides in California and brings this action pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 *et. seq.* ("ERISA").

2. Plaintiff works for Dexcom, Inc., a Delaware corporation headquartered in San Diego and conducting business throughout the state of California.

3. Defendant Dexcom Benefits Plan ("the Plan") is an ERISA-regulated employee welfare benefit as defined in 29 U.S.C. §1002(1) and is subject to suit under 29 U.S.C. §1132(d)(1).

4.    Defendant U.S. Behavioral Health Plan, California ("USBHPC") is a California corporation based in San Francisco and conducting business throughout the state of California.

5.    USBHPC is licensed by the California Department of Managed Health Care as a specialized health care service plan and does business under the name OptumHealth Behavioral Solutions of California ("USBHPC" or "Optum").

6.    Through the Dexcom Benefits Plan, Plaintiff obtained HMO coverage with UnitedHealthcare of California and supplemental behavioral health coverage with USBHPC for herself and her dependents. The coverage was in effect at all times material to this action.

7.    Plaintiff is a participant in the Plan within the meaning of 29 U.S.C. §1002(7) and is authorized to bring this action to enforce her rights and recover benefits due under the Plan pursuant to 29 U.S.C. §1132(a)(1)(B).

8.    USBHPC served as claims administrator, handled appeals, and made final benefit determinations under the Plan.

9.    As the entity responsible for the payment of behavioral health benefits, USBHPC is a proper party defendant in this action to recover benefits due under the Plan.

**Jurisdiction and Venue**

10.    This Court has jurisdiction pursuant to 29 U.S.C. §1132(e) and 28 U.S.C. §1331.

11.    Venue is proper in this District under 29 U.S.C. §1132(e)(2).

**Facts**

12.    This action arises from Optum's denial of coverage for eating disorder treatments given to Plaintiff's 15 year old daughter, G.S., during July-September 2014.

13.    By the spring of 2014, G.S. was severely restricting her food and fluid intake and was diagnosed with anorexia nervosa, major depressive disorder, and

generalized anxiety disorder.  She had a history of self-harm behaviors and suicidal thoughts.

14. In June 2014, G.S. began treating at University of California San Diego Eating Disorder Research and Treatment Center ("UCSD") five and a half days a week.  Despite receiving extensive therapy at UCSD, G.S. was unable to control her eating disorder behaviors whenever she was at home, resulting in repeated trips to the emergency room due to dehydration and food refusal.  When hospitalized, G.S. required naso-gastric tube feeding to meet her nutritional needs.

15. G.S.'s condition continued to deteriorate as she suffered further weight loss, weakness, dizziness, fainting, panic attacks, shortness of breath, and joint pain.  The UCSD treatment team determined that G.S. needed residential treatment that included intensive dietary and psychiatric therapies and 24-hour medical monitoring.

16. Plaintiff investigated treatment facilities for G.S. but discovered that suitable facilities were not available locally.  The only facility in California that accepted adolescent patients did not have a full-time psychiatrist on staff, did not have the capability to administer naso-gastric tube feeding, did not have medical staff present 24/7, and did not have locked units to continuously monitor patients and prevent them from harming themselves.

17. With the assistance of the UCSD team, Plaintiff located a suitable facility for G.S. known as The Eating Recovery Center ("ERC") in Denver, Colorado.  ERC is a highly-regarded facility that treats adolescents and provides a secure environment with continuous monitoring by on-site medical staff.  ERC was an in-network contracting provider under Plaintiff's Plan.

18. ERC sought preauthorization for G.S.'s treatment in accordance with Plan requirements.  On July 7, 2014, Optum verified that G.S. had coverage under the Plan in a telephone call with ERC staff.

19. On July 21, 2014, G.S. entered residential treatment at ERC's adolescent unit.  At the time of her admission, G.S. was over 5'8" tall but weighed only 105, was

3
ERISA COMPLAINT

taking psychotropic medications, and was suffering psychological and medical issues caused by her eating disorder, including migraines, amenorrhea, cold intolerance, and lightheadedness with recent syncope.

20. ERC diagnosed G.S. as suffering from anorexia nervosa (restricting type), major depressive disorder (recurrent), and generalized anxiety disorder.

21. G.S. refused to eat sufficient amounts after being admitted to ERC and needed to be fed by naso-gastric tube for seven days.

22. After G.S. entered treatment, Optum advised ERC that it would not cover her stay, despite Optum's previous verification of coverage to ERC.

23. In an adverse benefits determination letter dated July 30, 2014, Optum told Plaintiff that G.S.'s care was not covered because the Plan did not cover non-emergency mental health residential treatment at a non-California facility.  Optum did not evaluate whether any suitable alternative facilities were available in California and did not determine whether G.S.'s treatment at ERC was medically necessary.

24. G.S. continued in treatment at ERC and eventually made sufficient progress to "step down" to the next lower level of care, known as the Partial Hospitalization Program, on September 9, 2014.

25. After receiving Explanation of Benefits forms denying coverage, Plaintiff contacted Optum's Appeals Department on September 17, 2014, and was advised that she should not appeal, but ERC should request an appeal because G.S. was still in treatment.

26. G.S. remained at ERC until she was discharged on September 23, 2014 to resume treatment at the UCSD Eating Disorder Center.

27. On October 8, 2014, ERC submitted a written appeal to Optum.  ERC first requested that Optum review its notes and the recorded telephone call in which Optum had preauthorized G.S.'s treatment.  ERC also explained that no suitable treatment options had been available to G.S. in the state of California, given her age, and comorbid medical and psychiatric conditions.

28.     Optum rejected ERC's appeal in a letter dated December 12, 2014. The only stated basis was that the Plan did not cover mental health residential treatment at a non-California facility. Optum ignored ERC's request to investigate Optum's preauthorization of treatment. Optum also failed to address the information provided in ERC's appeal that there was no residential treatment facility for adolescents in California suitable to treat G.S.'s condition.

29.     On January 31, 2015, Plaintiff wrote Optum to appeal its continued denial of coverage. Plaintiff outlined her daughter's medical history and failed outpatient therapy, detailed her attempts to locate a treatment facility in California, and explained why no suitable treatment was available within the state.

30.     In a letter dated February 26, 2015, an Optum appeals specialist told Plaintiff that Optum would not process her appeal request on grounds that it was untimely, falsely claiming that Optum's adverse benefit determination letter had been sent to Plaintiff on July 24, 2014, even though the letter was dated July 30, 2014.

**Claim for Denial of Benefits**

31.     Plaintiff has exhausted her administrative remedies and fulfilled all other prerequisites to filing an action to recover benefits under 29 U.S.C. §1132(a)(1)(B).

32.     Optum's determination is subject to *de novo* review because the Plan did not contain a valid reservation or delegation of discretionary authority.

33.     Alternatively, this case warrants skeptical review of any discretionary determination because Optum operated under an inherent financial conflict of interest caused by its dual status as claims administrator and benefit underwriter.

34.     The Plan is subject to the California Mental Health Parity Act, California Health and Safety Code §1374.72, and the Federal Mental Health Parity and Addiction Equity Act, 29 U.S.C. §1185a (collectively, "Parity Statutes").

35.     G.S. suffered from anorexia nervosa and major depressive disorder, conditions constituting "Severe Mental Illness" as defined in the Plan and the California Mental Health Parity Act.

36. Under the terms of the Plan and the California Mental Health Parity Act, Optum was required to provide coverage for medically necessary inpatient, residential, or outpatient treatment services for Severe Mental Illness under the same terms and conditions as other medical conditions.

37. The Parity Statutes require coverage of residential treatment for eating disorders because such multi-faceted, intensive, and specialized treatment is recognized as the only effective therapy for patients whose condition has continued to deteriorate despite outpatient treatment.

38. In the absence of local treatment alternatives for G.S.'s condition, Optum's decision to deny coverage on the ground that ERC was not located in California operated as a *de facto* exclusion for residential treatment services, a practice forbidden under the Parity Statutes.

39. Optum denied Plaintiff the full and fair review to which she was entitled under 29 U.S.C. §1133 and 29 C.F.R. §2560.503-1 by failing to investigate whether treatment at ERC had in fact been preauthorized and whether any suitable alternative facilities were available to treat G.S. in California given her age and condition.

40. During the administrative process, Optum failed to investigate whether residential treatment at ERC was medically necessary for G.S., and Optum is now barred from disputing that such treatment was medically necessary.

41. The services provided to G.S. at ERC were medically necessary for her condition and constituted covered services for which payment was due.

42. Plaintiff is entitled to recover the benefits properly payable under the Plan in the principal amount to be proven at trial.

### Claim for Prejudgment Interest

43. Plaintiff is authorized to seek an award of prejudgment interest as appropriate equitable relief under 29 U.S.C. §1132(a)(3)(B) because Optum wrongfully retained and used funds that were properly payable under the Plan.

44. Plaintiff is entitled to recover prejudgment interest on the principal amount of the unpaid benefits at the rate of 10% per annum under California Insurance Code §10111.2 or such other rate as may be appropriate given the equities of the case, but in no event less than the rate established by 28 U.S.C. §1961.

### Claim for Costs and Attorneys' Fees

45. As a result of Defendant's wrongful denial of benefits, Plaintiff was forced to retain an attorney and has incurred court costs and attorney fees.

46. Plaintiff is entitled to recover her court costs and reasonable attorneys' fees pursuant to 29 U.S.C. §1132(g).

### Prayer for Relief

WHEREFORE, Plaintiff requests judgment against Defendants:

1. For behavioral health benefits wrongfully denied, in the principal amount proven at trial;

2. For prejudgment interest on the benefits withheld;

3. For costs and reasonable attorneys' fees incurred;

4. For postjudgment interest on the foregoing amounts; and

5. For such other relief as the Court deems just and proper.

Dated: March 3, 2016

**KANTOR & KANTOR, LLP**
LISA S. KANTOR
ELIZABETH K. GREEN

By: */s/ Lisa S. Kantor*
Lisa S. Kantor
Attorneys for Plaintiff
Suzanne Stone

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525